1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16
17

OLLIE KELLY,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 11-3295 JCG

**MEMORANDUM OPINION AND
ORDER**

18
19

**I.**

20

**INTRODUCTION AND SUMMARY**

21
22
23
24

      On April 25, 2011, plaintiff Ollie Kelly ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of supplemental security income benefits ("SSI").  [Docket No. 3.]

25
26

      On October 31, 2011, Defendant filed his answer, along with a certified copy of the administrative record.  [Docket Nos. 13-15.]

27
28

      In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that, as detailed below, there is

1    substantial evidence in the record, taken as a whole, to support the decision of the

2    Administrative Law Judge ("ALJ").  Thus, the Court affirms the Commissioner's

3    decision denying benefits.

**II.**

**PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

6        Plaintiff, who was 51 years old on the date of his administrative hearing, is a

7    high school graduate.  (*See* Administrative Record ("AR") at 29, 33, 108, 165.)

8        On May 27, 2008, Plaintiff filed for SSI, alleging that he has been disabled

9    since December 1, 2006 due to mental problems, hypertension, and asthma.  (*See*

10   AR at 65, 108, 161.)

11       On November 9, 2009, Plaintiff, represented by counsel, appeared and

12   testified at a hearing before an ALJ.  (*See* AR at 29-63.)  The ALJ also heard

13   testimony from Craig Rath, Ph.D., a medical expert ("ME"), and Kelly Winn-

14   Boaitey, a vocational expert ("VE").  (*Id.*; *see also id.* at 100, 102.)

15       On February 4, 2010, the ALJ denied Plaintiff's request for benefits.  (AR at

16   17-25.)  Applying the familiar five-step sequential evaluation process, the ALJ

17   found, at step one, that Plaintiff has not engaged in substantial gainful activity since

18   his SSI application date.  (*Id.* at 19.)

19       At step two, the ALJ found that Plaintiff suffers from severe impairments

20   consisting of "lumbar spondylosis, left knee pain, obesity and asthma[, and] mood

21   disorder, [not otherwise specified]."  (AR at 19 (bold omitted).)

22       At step three, the ALJ determined that the evidence did not demonstrate that

23   Plaintiff's impairments, either individually or in combination, meet or medically

24   equaled the severity of any listing set forth in the Social Security regulations.[1]  (AR

25   at 19-20.)

26

27   _____

28       [1]   *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

2

1    The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and

2    determined that he can:

3              lift and carry up to 20 pounds occasionally and 10 pounds

4              frequently, and sit, stand and walk 6 hours in an 8-hour workday

5              . . . except [Plaintiff] must avoid even moderate exposure to

6              fumes, odors, dusts, gases and poor ventilation.  His impairments

7              restrict him to limited public contact and inherently stressful

8              interpersonal situations.  [Plaintiff] must avoid jobs with close

9              supervision and high production quotas, and is limited to object

10             oriented work.

11   (AR at 20 (bold omitted).)

12   The ALJ found, at step four, that Plaintiff has no past relevant work.  (AR at

13   24.)

14   At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found

15   that "there are jobs that exist in significant numbers in the national economy that

16   [Plaintiff] can perform," including small parts assembler, hand packager, and office

17   helper.  (AR at 24-25 (bold omitted).)  Thus, the ALJ concluded that Plaintiff was

18   not suffering from a disability as defined by the Act.  (*Id.* at 17, 25.)

19   Plaintiff filed a timely request for review of the ALJ's decision, which was

20   denied by the Appeals Council.  (AR at 1-3, 13.)  The ALJ's decision stands as the

21   final decision of the Commissioner.

22   / / /

23

24   _____

25   [2]   Residual functional capacity is what a claimant can still do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155

26   n. 5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
     ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's

27   residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th

28   Cir. 2007).

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# III.

## STANDARD OF REVIEW

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.

## ISSUE PRESENTED

A single disputed issue is presented here: whether the ALJ properly concluded at step five that Plaintiff could perform alternative work. (Joint Stip. at 5-

4

1  11, 14-16.)

2                                    **V.**

3                       **DISCUSSION AND ANALYSIS**

4          Plaintiff argues that the ALJ improperly relied on the VE's testimony that

5  Plaintiff can perform alternative work.  Plaintiff contends that the "error lies in the

6  identification of the cited work despite the ALJ limiting [Plaintiff] to no high

7  production quota work."  (Joint Stip. at 5-6.)  Plaintiff maintains that the VE "is

8  incorrect" in testifying that "the identified three occupations do not have high

9  production quotas and are not 'assembly line' work."  (*Id.* at 6.)

10         A.    Step-Five Determination

11         At step five of the sequential evaluation, the burden of proof shifts to the

12  Commissioner to identify specific jobs existing in substantial numbers in the

13  national economy that a claimant can perform despite his identified limitations.

14  *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).  One method of

15  demonstrating the existence of these jobs is through the testimony of a VE, who can

16  assess the effect of any limitation on the range of work at issue, identify jobs which

17  are within the RFC, if they exist, and provide a statement of the incidence of such

18  jobs in the region where the claimant lives or in several regions of the country.

19  Social Security Ruling ("SSR") 83-12,[3/] 1983 WL 31253, at *3.

20         Pursuant to SSR 00-4p, when a VE provides evidence about the requirements

21  of a job or occupation, the ALJ has "an affirmative responsibility to ask about any

22  possible conflict" between that testimony and the *Dictionary of Occupational Titles*

23  _____

24        [3/]   "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the
    Act's implementing regulations and the agency's policies.  SSRs are binding on all
25  components of the [Social Security Administration].  SSRs do not have the force of
    law.  However, because they represent the Commissioner's interpretation of the
26  agency's regulations, we give them some deference.  We will not defer to SSRs if
    they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246
27  F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

28

                                        5

1    ("DOT") and to obtain a reasonable explanation for any conflict.[4]  2000 WL

2    1898704, at *4.  An ALJ may not rely on a VE's testimony without first inquiring

3    whether the testimony conflicts with the DOT.  *Massachi v. Astrue*, 486 F.3d 1149,

4    1152 (9th Cir. 2007).

5            Neither the DOT nor the testimony of the VE "automatically 'trumps' when

6    there is a conflict."  *Massachi*, 486 F.3d at 1153 (footnote omitted).  Accordingly,

7    the ALJ must first determine whether a conflict exists.  *Id.*  If it does, the ALJ "must

8    then determine whether the [VE's] explanation for the conflict is reasonable and

9    whether a basis exists for relying on the expert rather than the [DOT]."  *Id.*

10            B.    The ALJ Properly Relied on the VE's Testimony

11           The Court finds that the ALJ's step-five determination is supported by

12   substantial evidence and the ALJ properly relied on the VE's testimony.

13           In assessing Plaintiff's RFC, the ALJ determined that Plaintiff "must avoid

14   jobs with . . . high production quotas."  (AR at 20.)  In questioning the VE whether

15   Plaintiff could perform alternative work based on his RFC, the VE responded that

16   Plaintiff could perform the jobs of small products assembler, DOT 706.684-022,

17   1991 WL 679050, hand packager, DOT 559.687-074, 1991 WL 683797, and office

18   helper, DOT 239.567-010, 1991 WL 672232.  (*Id.* at 55-57.)  The VE stated that her

19   opinion was "consistent with the [DOT]."  (*Id.* at 58.)  Further, when questioned by

20   Plaintiff's attorney whether the cited positions "normally have production quotas or

21   some type of [certain pace] that they need to be performed at," the VE responded:

22                    Well, any job is going to require that someone accomplish things

23                    during the workday.  It is not, though, a job where in an assembly

24                    line and things are going on quickly, it's more of a bench type

25

26   _____

27   [4]   The Commissioner primarily relies on the DOT for "information about the
     requirements of work in the national economy."  *Massachi*, 486 F.3d at 1153

28   (internal quotation marks and footnote omitted)

1              thing where simple assembly is going.  So yes there is production

2              but not high production quota as outlined by the doctor.

3 (*Id.* at 59.)

4       Here, Plaintiff fails to establish that there is a conflict between the VE's

5 testimony and the DOT.  Although the small products assembler job refers to

6 performing work "at [a] bench as [a] member of [an] assembly group," DOT

7 706.684-022, neither the hand packager or office helper positions explicitly define

8 the jobs as involving an assembly line, as asserted by Plaintiff.  (*See* Joint Stip. at 6.)

9 More importantly, there is no requirement of any *production expectancy* affiliated

10 with *any* of the jobs listed by the VE.  *See* DOT 706.684-022 (small products

11 assembler); DOT 559.687-074 (hand packager); DOT 239.567-010 (office helper);

12 *see, e.g., Scott v. Comm'r*, 2011 WL 720198, at *9 (N.D. Ohio 2011) (explaining

13 that the job of hand packager does "not require an ability to maintain concentration,

14 persistence or pace" and requires only "a markedly low aptitude ability for

15 performing repetitive or short cycle work" but concluding that the job does not

16 require "any production expectancy"); *Young v. Apfel*, 40 Fed.Appx. 157, 161-63

17 (6th Cir. 2002) (affirming ALJ's conclusion that bench assembly and hand packing

18 jobs did not involve high production quotas).

19       Further, testimony from the VE was elicited explaining the production

20 requirements of the jobs cited.  In fact, the VE stated that the jobs of small products

21 assembler, hand packager, and office helper require "production but not high

22 production quota[s]."  (AR at 59.)  The VE also reported that the jobs require only

23 "simple assembly."  (*Id.*)  Accordingly, the VE's statements demonstrate that the VE

24 considered Plaintiff's specific limitations and the specific DOT descriptions of these

25 jobs, and substantial evidence supports the ALJ's conclusion that the VE's

26 descriptions did not conflict with the DOT descriptions.  *See also Massachi*, 486

27 F.3d at 1154 n. 19 (If ALJ did not ask the VE whether her testimony conflicted with

28 the DOT, error could be "harmless, were there no conflict, or if the [VE] had

1  provided sufficient support for her conclusion so as to justify any potential

2  conflicts[.]").

3        Thus, since there is no apparent conflict between the VE's testimony and the

4  DOT, the ALJ was not required to provide a reasonable explanation for relying on

5  that part of the VE's testimony.  *See* SSR 00-4p, 2000 WL 1898704, at *4 ("If the

6  VE's . . . evidence *appears to conflict* with the DOT, the adjudicator will obtain a

7  reasonable explanation for the *apparent conflict*.") (emphasis added).

8        Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

9  **AFFIRMING** the decision of the Commissioner denying benefits.

10

11  Dated: April 26, 2012                    _____

12                                            Hon. Jay C. Gandhi

13                                          United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28